# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| CRISTINE E. NEWMAN,<br><br>Plaintiff,<br><br>v.<br><br>JEKYLL ISLAND III HOTEL MANAGEMENT, LLC,<br><br>Defendant. | 2:25-CV-163 |

## ORDER

This action is before the Court on Defendant Jekyll Island III Hotel Management, LLC's motion to dismiss the amended complaint, dkt. no. 7. The motion has been fully briefed, dkt. nos. 7, 9, 10, and the Court held oral argument on August 3, 2026, dkt. no. 28. For the reasons set forth below, Defendant's motion to dismiss, dkt. no. 7, is **DENIED**.

## BACKGROUND[1]

Defendant Jekyll Island III Hotel Management, LLC ("Jekyll Island") manages the Courtyard Jekyll Island Hotel on Jekyll Island, Georgia. Dkt. No. 6 ¶¶ 14, 23. This action surrounds

[1] At this procedural juncture, the Court "accept[s] all factual allegations in a complaint as true[,] and take[s] them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

Plaintiff Cristine Newman's employment at the "Shore" restaurant located in that hotel. Id. ¶¶ 23–24. Beginning on or about December 23, 2021, Plaintiff began working as the Lead Bartender at Shore. Id. ¶ 24. Plaintiff alleges that, since May 2024, her first-line supervisor was an individual named Sara Demarco, id. ¶ 25, and, since about February 2024, Shore's lead cook was a man named Brinel Curry, id. ¶ 27. Curry's position was more senior than Plaintiff's position, and, when the kitchen's chef was not working, Curry was in charge of "the back of the house." Id. Plaintiff also alleges that Curry was friends with Rick Norman, Shore's general manager, and that the two men frequently socialized with one another outside the workplace. Id. ¶ 28.

Plaintiff alleges that she engaged in consensual sexual relations with Curry on two occasions—once in mid-February 2024 and once in late March 2024. Id. ¶ 29. In the days following the second sexual encounter, Plaintiff allegedly informed Curry that she was no longer interested in having a sexual or romantic relationship with him. Id. ¶ 30. Despite this, Plaintiff contends that Curry continued to make sexual advances toward her in the workplace, citing multiple instances of such advances allegedly occurring between April 2024 and November 2024. Id. ¶ 31.

For example, Plaintiff describes how Curry purportedly invaded her personal space and touched her buttocks, continuing to do so despite Plaintiff's immediate requests that he stop on each

occasion. Id. ¶ 32. Plaintiff also points to multiple occasions on which Curry allegedly cornered her in the dry storage room or kitchen cooler and tried to kiss her, leading Plaintiff to try to "dodge" Curry's efforts to kiss her lips. Id. ¶ 33. Despite Plaintiff's efforts to avoid him, Curry's lips would allegedly often make contact with Plaintiff's cheek or body. Id. Additionally, Plaintiff states that Curry retaliated against her rejection during this time period by using offensive language when referring to Plaintiff, gesturing toward her with his fingers and tongue in an inappropriate manner, grabbing his crotch while staring at Plaintiff, and spreading false rumors to other employees that he and Plaintiff had sexual relations in the Courtyard Jekyll Island Hotel as part of an ongoing sexual relationship. Id. ¶¶ 34–37.

Beyond the allegations regarding Curry's conduct from April to November 2024, the amended complaint lists various specific dates of alleged actions by Curry which Plaintiff believes were in retaliation for her rejection of his sexual advances. Id. ¶¶ 36–41. According to those allegations, on or about November 23, 2024, Curry purportedly invaded Plaintiff's personal space and told her to kiss him, and Plaintiff told him she was not interested. Id. ¶ 38. But approximately two days later, on or about November 25, 2024, Curry allegedly commented on the way Plaintiff's body looked in the pants she wore. Id. ¶ 39. Then, on or about November 30,

2024, Curry stated that he "used to be [Plaintiff's] boss" in a manner which referred to the two's prior sexual relations. Id. ¶ 40. Plaintiff also contends that Curry intentionally erred in preparation of food orders, preventing Plaintiff from successfully performing her job duties. Id. ¶ 41.

According to the amended complaint, Plaintiff reported the alleged harassment to Sara Demarco as early as May 2024, and Plaintiff "repeatedly reported" Curry's continued sexual advances to Demarco beyond that date. Id. ¶¶ 43-44. While Plaintiff contends that Demarco did not take any action as a result of these initial reports, Demarco did, in November 2024, encourage Plaintiff to submit a written complaint to Norman and HR Manager Donna Simpson in higher management, which Plaintiff did on or about December 2, 2024. Id. ¶¶ 46-47. The next day—December 3, 2024—Simpson and Demarco met with Plaintiff to discuss her complaint and promised that they would investigate the allegations, and Simpson stated that she would adjust work schedules so that Plaintiff and Curry would not be working simultaneously. Id. ¶¶ 48-49.

On December 8, 2024, Plaintiff allegedly reported to work at 3:45 p.m. for a shift which began at 4:00 p.m. Id. ¶ 50. When she arrived, Plaintiff saw Curry, even though he was not on the schedule to work that day and management had not notified Plaintiff that Curry would be present. Id. ¶ 53. Though Curry left shortly after, Plaintiff was nonetheless concerned that Curry was present

at the worksite; as a result, Plaintiff notified Demarco of these concerns, telling Demarco that "she did not feel protected." Id. ¶¶ 54–55. According to the amended complaint, Demarco rolled her eyes and did nothing to remedy Plaintiff's concerns, leading Plaintiff to tell HR Manager Simpson about the situation and Demarco's dismissive reaction to Plaintiff's report. Id. ¶¶ 55–56. Plaintiff then alleges that, after she notified Simpson of the situation, Demarco stopped speaking to Plaintiff despite being Plaintiff's supervisor. Id. ¶ 57.

The amended complaint outlines a series of managerial actions which purportedly took place in the days following the December 8, 2024 report. Id. ¶¶ 58–70. Plaintiff alleges that, on December 13 and 14, 2024, Jekyll Island implemented a policy which prohibited Plaintiff from running food from the kitchen—one of her job duties. Id. ¶ 58. Then, on December 16, 2024, Norman and Simpson executed an "Employee Performance Record" indicating that management believed Plaintiff's conduct throughout the sexual harassment investigation amounted to a violation of the employee handbook's Interpersonal Conduct and Civility Policy. Dkt. No. 5-1 at 2–4.[2]

[2] The employee performance report itself is on the record, as it was attached to Jekyll Island's first motion to dismiss. Dkt. No. 5-1. Both parties reference and rely upon that document when discussing the present motion. Id.; Dkt. No. 7 at 8; Dkt. No. 9 at 7. A document attached to a motion to dismiss may be considered in the motion to dismiss analysis without converting it to a motion for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt,

More specifically, the document itself indicates that both Curry and Plaintiff repeatedly failed to cooperate with management's requests to produce text messages between the two pursuant to its sexual harassment investigation. Id. The document also gave Curry and Plaintiff forty-eight hours to submit required written statements confirming their commitment to working together in a professional and respectful manner. Id. at 3. Finally, the document specifies that this was Plaintiff's second written warning of disciplinary concerns, noting that the next action to be taken to address these concerns, if any, would be termination of employment. Id.

Plaintiff contends that Norman and Simpson directed her to sign this document and indicated that she would be terminated if she refused to do so. Dkt. No. 6 ¶ 61. Plaintiff refused to sign the document, and management did not allow her to keep a copy of

---

304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted). "'Undisputed' in this context means that the authenticity of the document is not challenged." Id. This document is central to Plaintiff's claims because it allegedly "reprimands" Plaintiff and otherwise involves the result of an employee investigation triggered by the events described in the amended complaint. Dkt. No. 5-1. And, while Plaintiff challenges Defendant's interpretation of the document, she does not cast doubt on its authenticity. Dkt. No. 9 at 7. Accordingly, it is proper to consider this exhibit when ruling on the motion to dismiss. That being so, to the extent the contents of the document itself contradict the general or conclusory allegations in the amended complaint, the document should govern. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007); RenewalMD, PC v. Shanklin, No. 4:21-CV-184, 2022 WL 1612073, at *3 (S.D. Ga. May 20, 2022).

the document. Id. ¶ 62. Plaintiff interpreted this as a constructive discharge and did not report to work after December 16, 2024, especially in light of the alleged lack of assurance that she would be protected from the sexual harassment she reported. Id. ¶ 63. While Plaintiff contends that Shore management ordinarily contacted employees who failed to report to a scheduled shift, she was not contacted by management after December 16, 2024 to determine why she did not report to work. Id. ¶¶ 64–65. Instead, on or about December 26, 2024, Norman issued a letter to Plaintiff stating that she had been terminated due to "job abandonment" as of December 24, 2024. Id. ¶¶ 66–67. Plaintiff contends that, contrary to how Jekyll Island treated her, Curry was not reprimanded for his actions or given a "final warning," nor was he terminated as a result of the alleged sexual harassment. Id. ¶¶ 68–70.

Plaintiff filed her complaint against Jekyll Island in this Court on December 19, 2025. Dkt. No. 1. On January 30, 2026, Jekyll Island moved to dismiss the complaint. Dkt. No. 5. On February 13, 2026, before the Court ruled on the motion to dismiss, Plaintiff filed an amended complaint, dkt. no. 6, and the Court denied Jekyll Island's first motion to dismiss as moot, dkt. no. 8. In the amended complaint, Plaintiff pursues claims for sex discrimination by harassment, in violation of Title VII of the Civil Rights Act of 1964 (Count I); disparate treatment discrimination on the basis

of sex in violation of Title VII (Count II); retaliation in violation of Title VII (Count III); and negligent retention in violation of Georgia law (Count IV). Jekyll Island now renews its motion to dismiss Plaintiff's amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 7. The motion has been fully briefed, and the Court held oral argument by video conference on August 3, 2026. Dkt. Nos. 7, 9, 10, 28.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." When analyzing such motions, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348–49 (11th Cir. 2016) (citing Ironworkers Loc. Union 68 v. AstraZeneca Pharms., 634 F.3d 1352, 1359 (11th Cir. 2011)). Legal conclusions, on the other hand, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

In its analysis, the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Id. Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d

1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

To analyze whether a complaint can surpass a motion to dismiss for failure to state a claim, the core inquiry is whether the complaint contains sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This means that the complaint must contain sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This is not a probability requirement; rather, a complaint must give rise to "'more than a sheer possibility' that the plaintiff's allegations are true." Gissendaner v. Comm'r, Ga. Dep't of Corr., 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

**DISCUSSION**

The motion to dismiss pending before the Court proceeds in three parts. Dkt. No. 7. First, Jekyll Island contends that Plaintiff's sexual harassment claim is "implausible." Id. at 4–7. Jekyll Island then presents a similar implausibility argument with respect to Plaintiff's sex discrimination and retaliation claims. Id. at 7–10. Finally, Jekyll Island contends that Plaintiff's negligent retention claim is a derivative claim which fails as a matter of law because Plaintiff has not alleged another actionable claim under state law as a separate count. Id. at 10–11. The Court

holds that none of the arguments pursued by Jekyll Island justify dismissal of the amended complaint at this time.

## I. Count I: Plaintiff's Sexual Harassment Claim

To establish a claim for unlawful sexual harassment under Title VII, an employee must show that (1) she is a member of a protected group; (2) she was subjected to unwelcome conduct; (3) the conduct was based on Plaintiff's sex; (4) the conduct affected a term, condition, or privilege of Plaintiff's employment; and (5) liability against the employer is appropriate. Mendoza v. Borden, 195 F.3d 1238, 1245 (11th Cir. 1999); see also Palisano v. City of Clearwater, 219 F. Supp. 2d 1249, 1254 n.3 (M.D. Fla. 2002), aff'd, 62 F. App'x 320 (11th Cir. 2003). When an employee seeks to hold an employer liable for workplace harassment, "the plaintiff cannot prevail unless she can show that her employer 'knew or should have known of the harassment in question and failed to take prompt remedial action.'" Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1557 (11th Cir. 1987) (quoting Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir. 1982)).

Jekyll Island's motion to dismiss specifically challenges the fifth element of Count I: the propriety of liability against the employer. Dkt. No. 7 at 4–7. To this end, Jekyll Island seeks dismissal of Count I because the amended complaint does not contain an exact date when Sara Demarco became Plaintiff's supervisor. Dkt. No. 7 at 4–7. According to the renewed motion to dismiss, any

complaints made by Plaintiff to Demarco before Demarco became Plaintiff's supervisor are without legal effect as to Jekyll Island because Demarco would not have any supervisory obligation to report allegations of sexual harassment. Id. On this point, Jekyll Island notes that, under Federal Rule of Civil Procedure 9(f), an "allegation of time or place is material when testing the sufficiency of a pleading." Id. at 5. Jekyll Island also offers to "informally produce documentation to Plaintiff showing Demarco was not promoted to a supervisor until November 2024," the same month during which Plaintiff alleges she spoke with Demarco and was told by Demarco to submit a written complaint to higher management. Id. (citing Dkt. No. 6 ¶¶ 40, 44).

In response, Plaintiff contends that she plausibly alleged all elements relevant to prevailing on a sexual harassment claim, stating that Jekyll Island's argument for dismissal of Count I attempts to cast doubt on the truthfulness of the factual allegations in the complaint, which is not proper at this procedural juncture. Dkt. No 9 at 3. Past this, Plaintiff also challenges Jekyll Island's argument respecting Rule 9(f), contending that this Rule does not impose any substantive pleading requirements on Plaintiff. Id. at 5. In its reply, Jekyll Island submits that it is not asking the Court to make improper credibility determinations at this juncture, but rather that "the lack of legal or factual support in Plaintiff's response reinforces

that her claims are not plausible because she cannot truthfully allege them." Dkt. No. 10 at 5-6.

Jekyll Island fails to raise a viable reason to dismiss Count I. The amended complaint explicitly states that "[s]ince May 2024, Ms. Newman's first-line supervisor was Sara Demarco." Dkt. No. 6 ¶ 25. According to the amended complaint, Plaintiff began reporting the alleged sexual harassment "as early as May 2024"—the same time period when Plaintiff alleges Demarco became her supervisor. Id. ¶ 43. Plaintiff then alleges that, going forward, she repeatedly reported the alleged harassment to Demarco, also citing specific instances in November and December 2024 during which she spoke to Demarco about the issue. Id. ¶¶ 45-47. These allegations make it plausible that Plaintiff reported sexual harassment to an individual with supervisory authority, as the allegations, taken as true, state that Demarco had supervisory authority from May 2024 going forward, and Plaintiff's reports to her occurred during the same exact time period where Demarco allegedly held that supervisory role—May 2024 going forward. Id. ¶¶ 25, 43, 45-47.

Jekyll Island does not point to any case holding that, to defeat a motion to dismiss, a plaintiff seeking to hold an employer liable for harassment must identify the *exact date* an individual with alleged notice of harassment undertook a supervisory position at the company. Dkt. No. 7 at 4-7. Nor does Jekyll Island cite to any case law indicating that Plaintiff falls short of pleading

requirements by identifying the month and year during which Demarco began supervising her, without identifying an exact day. Dkt. No. 6 ¶ 25. Jekyll Island points instead to Burch v. McDonough, a case from a sister court in this circuit, for the proposition that complaints to another employee before that employee had supervisory authority are without legal effect. Id. at 4–5 (citing Burch v. McDonough, No. 120CV05017LMMJEM, 2023 WL 9420174, at *6 (N.D. Ga. May 11, 2023), report and recommendation adopted as modified, 2023 WL 9420175 (June 27, 2023)). It is true that, in Burch, the court indicated that, under the employer's harassment policy, "a reasonable jury would not find that a coworker with no management or supervisory authority—over the reporting employee or any other employee—is an appropriate resource to whom sexual harassment could be reported." 2023 WL 9420174, at *6. But notably *missing* from Burch is any pronouncement of pleading requirements, as that case involved a motion for *summary judgment*, not a motion to dismiss. Id. at *4.

Jekyll Island fares no better with respect to the second source to which it points in support of its "exact date" argument: Federal Rule of Civil Procedure 9(f). Generally speaking, Rule 9 deals with pleading "special matters," whereas "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." Swierkiewicz v. Sorema N. Am., 534 U.S. 506,

513 (2002).[3] In Swierkiewicz, the Supreme Court held that complaints in Title VII employment discrimination cases need only satisfy the general pleading requirements of Rule 8, rather than Rule 9's heightened standard. 534 U.S. at 513.

Even assuming, for argument's sake, that Rule 9(f) is relevant to the present dispute, this rule does not impose any additional pleading "elements" beyond those required under applicable substantive law. To explain, the text of Rule 9(f) states only that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). Based on the plain text, Rule 9(f) merely states the significance of allegations of time and place when a pleader interposes them in a complaint or answer, but whether such allegations are required to survive a motion to dismiss is governed by the substantive nature of the claim. See 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1309 (4th ed. 2026); see also Skye v. Maersk Line, Ltd., No. 11-21589-CIV, 2011 WL 4528305, at *3 (S.D. Fla. Sept. 28, 2011) (citing Matthew v. United States, 452 F. Supp. 2d 433, 446 (S.D.N.Y. 2006)).

[3] Swierkiewicz was decided before the Supreme Court decided Twombly and Iqbal and makes reference to the notice pleading requirements which governed in the federal court system prior to 2007; to the extent Swierkiewicz indicates that Rule 8 provides the pleading standard applicable to a Title VII claim, though, the case remains instructive, even if Twombly, Iqbal, and their progeny have altered the way courts *apply* Rule 8 since then. See generally Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

At oral argument, Jekyll Island directed the Court to two cases to support its contention that Rule 9 requires Plaintiff to allege the exact date of Demarco's promotion: Robinson v. Michelin North America, Inc., No. 1:16CV00656-SRW, 2016 WL 7015636, at *3 (M.D. Ala. Nov. 30, 2016), and Akins v. Jefferson County Department of Human Resources, No. 2:16-CV-662-VEH, 2017 WL 1105721, at *8 (N.D. Ala. Mar. 24, 2017). See generally Dkt. No. 28. Neither case, however, imposes a requirement that plaintiffs pursuing a Title VII claim against an employer identify the precise date when an individual alleged to have notice of harassment assumed supervisory responsibility; instead, these cases discuss allegations of timing in the context of the timeliness requirements and administrative prerequisites which can impact a Title VII claim. See Robinson, 2016 WL 7015636, at *3; Akin, 2017 WL 1105721, at *8.

For example, in Robinson, the court granted defendant's motion for a more definite statement where the court could not discern the timeliness of claims brought under the Americans with Disabilities Act of 1990 (ADA), the Age Discrimination in Employment Act of 1967 (ADEA), and Title VII. 2016 WL 7015636, at *1, *3. There, after independently analyzing whether the complaint complied with Federal Rules of Civil Procedure 8 and 10—and concluding that the complaint fell short—the court noted that the plaintiff "must set forth allegations as to the timing of events

with sufficient particularity to permit the court to ascertain whether cognizable ADA, ADEA or Title VII claims are raised by her factual averments." Id. at *3. Citing Rule 9(f), the court noted that the various timeliness requirements and statutes of limitations governing ADA, ADEA, and Title VII claims rendered "material" the timing of plaintiff's factual allegations. Id.

Similarly, in Akins, the court stated that "the failure to state any dates upon which any alleged acts occurred is fatal since '[a]n allegation of time or place is material when testing the sufficiency of a pleading.'" 2017 WL 1105721, at *8 (quoting Fed. R. Civ. P. 9(f)). According to Akins, this proposition is "particularly true in discrimination cases when one considers the administrative prerequisites which must be followed prior to initiating a lawsuit." Id.

Notably, here, the arguments raised by Jekyll Island with respect to allegations of timing are distinct from those discussed in Robinson and Akins. Dkt. Nos. 7, 10. Distinct from Robinson, Jekyll Island is not arguing that the complaint fails to sufficiently identify the dates of the alleged events to allow it to discern whether Count I is *timely*. See generally Dkt. Nos. 7, 10; Robinson, 2016 WL 7015636, at *1, *3. Nor does Jekyll Island contend that the complaint fails to state any dates at all, distinguishing the present dispute from the analysis in Akins. Id.; Akins, 2017 WL 1105721, at *8. In fact, the amended complaint

is littered with time-focused allegations, with Plaintiff outlining her dates of employment with Jekyll Island and referencing by month and year a timeframe during which she experienced various alleged "assaults" by Curry, even identifying specific days on which some of the disputed conduct by Curry allegedly occurred. Dkt. No. 6 ¶¶ 32–70. At bottom, the instant motion involves issues distinct from those raised in Robinson and Akins. The amended complaint does not contain the deficiencies described in those two cases, and neither case imposes a requirement that Plaintiff allege a precise date of Demarco's promotion beyond what already appears in the amended complaint. Dkt. No. 6 ¶ 25; Robinson, 2016 WL 7015636, at *3; Akins, 2017 WL 1105721, at *8.

Further, the Court notes that Jekyll Island's offer to "informally" provide Plaintiff's counsel with a record of the true date of Demarco's promotion does not impact the analysis at this procedural threshold. Dkt. No. 7 at 5. For the purposes of the present analysis, the factual allegations in the amended complaint, such as an allegation that Demarco was Plaintiff's supervisor beginning in May 2024, are entitled to a presumption of truth. Iqbal, 556 U.S. at 678–79. While it is true that, under certain circumstances, the contents of an exhibit outside of the four corners of the complaint will govern over the complaint itself at the motion to dismiss stage, those circumstances arise when the

parties actually provide that exhibit to the court. Irvin, 496 F.3d at 1206. Here, Jekyll Island merely offers to informally provide a document to Plaintiff but does not provide that document to the Court to allow it to make any pronouncement as to how that document's contents could impact the Court's interpretation of the allegations in the amended complaint. Dkt. No. 7 at 5.[4]

Finally, Jekyll Island's remaining general pleading arguments do not warrant dismissal of Count I. To this end, Jekyll Island argues that Plaintiff has not plausibly alleged that the corrective measures it took to address the sexual harassment were insufficient such that it would be proper to hold the company liable. Id. at 5–7. While Jekyll Island contends that the amended complaint shows it investigated the report of sexual harassment right away, the allegations themselves tell a different story: that Curry began making unwanted sexual advances toward Plaintiff in late March and April 2024, dkt. no. 6 ¶¶ 29–30; Plaintiff began reporting the harassment to a supervisory employee as early as May 2024, id.

[4] Similar to its argument regarding when Demarco was promoted to supervisor, Jekyll Island also attempts to "call Plaintiff's bluff" regarding the time at which she arrived at work on December 8, 2024. Dkt. No. 7 at 6; Dkt. No. 6 ¶ 50 (alleging Plaintiff arrived for her shift at 3:45 p.m.). Defendant again points to Rule 9(f) in support, then offers to provide Plaintiff's counsel with a written statement indicating that Plaintiff actually arrived at 3:20 p.m.—but that "written statement" appears nowhere in the record for the Court's review. Dkt. No. 7 at 6. As such, referring to this purported "written statement," without providing such a statement to the Court, holds no weight in the instant motion to dismiss analysis.

¶¶ 25, 43-49; and Plaintiff continued to repeatedly report the harassment to that same supervisory employee, yet no effective action was taken before November 2024, id.

Taken as true, the facts in the amended complaint demonstrate that despite Demarco's knowledge of Curry's alleged sexual harassment of Plaintiff, Demarco failed to take any remedial action to prevent future harassment between May 2024 and November 2024, leading Plaintiff to experience further purported harassing behavior by Curry during that period. Id. ¶¶ 25, 29-49; see also Palisano, 219 F. Supp. 2d at 1254 n.3 (holding that similar allegations satisfied requirements to state a Section 1983 claim governed by the same standard as a Title VII sexual harassment claim against an employer (citing Cross v. State of Ala., 49 F.3d 1490, 1507-08 (11th Cir. 1995))). These allegations that a supervisory employee failed to take any corrective action for months despite her notice of alleged harassment contradict both Jekyll Island's contention that the harassment was investigated immediately and its contention that Plaintiff fails to allege Jekyll Island's substantive measures were insufficient.

The Court rejects Defendant's invitation to the Court and/or the Plaintiff to "informally" consider discovery material that it contends would bolster its chance of prevailing. Instead, the Court will adhere to the process set forth in the Federal Rules of Civil

Procedure. Accordingly, the Court **DENIES** Jekyll Island's motion to dismiss with respect to Count I.

**II. Counts II and III: Plaintiff's Sex Discrimination and Retaliation Claims**

Jekyll Island sets forth two primary arguments for dismissal of Counts II and III. Dkt. No. 7 at 7-10. First, Jekyll Island contends many of Plaintiff's allegations surrounding her termination are rendered "demonstrably false" by the employee performance record previously submitted as an attachment to Jekyll Island's first motion to dismiss. Id.; Dkt. No. 5-1. Additionally, Jekyll Island argues that Plaintiff does not plausibly allege the elements of either claim, specifically challenging whether Plaintiff's allegations make it plausible that she suffered a materially adverse employment action. Dkt. No. 7 at 8-10.

Regarding the first argument, Plaintiff disagrees with Jekyll Island's statement that the employee performance record establishes that Plaintiff's allegations are inaccurate. Dkt. No. 9 at 7. Plaintiff refers to the disputed document in the amended complaint, stating that the document "(1) reprimanded [Plaintiff] for reporting to work on December 8, 2024 while Curry was present at the worksite, (2) stated that [Jekyll Island] would not take any action against Curry based on [Plaintiff's] allegations, and (3) stated that it was a 'Final Warning' for [Plaintiff] and [Jekyll Island] would discipline her for future wrongdoing." Dkt.

No. 6 ¶ 59. Plaintiff further claims that, when Norman and Simpson presented her with the document, they warned Plaintiff that she would be terminated if she refused to sign it. Id. ¶ 61.

Based on the employee performance record, Jekyll Island maintains that Counts II and III are premised on a "misstatement" that "New Castle terminated Plaintiff's employment." Id. at 7 (citing Dkt. No. 6 ¶ 80).[5] Jekyll Island specifically takes issue with Plaintiff's contentions that this document was a "retaliatory document" that "reprimanded" Plaintiff for reporting early to work; stated Jekyll Island would not take any action against Curry; and "made clear" that Plaintiff would have to continue working with Curry, that Jekyll Island would take no measures, and that it blamed Plaintiff for Curry's actions. Dkt. No. 7 at 8. Jekyll also contends that this document undermines the contention that "Human Resources told Plaintiff she would be terminated if she did not sign" the document. Id.

As a preliminary matter, while Plaintiff refers to the employee performance record as "the Retaliation Document" throughout the amended complaint, dkt. no. 6 ¶¶ 59-62, whether the document qualifies as retaliatory is a legal conclusion which is not entitled to a presumption of truth at this stage. Iqbal, 556

[5] "New Castle Hotels & Resorts" is the entity identified in the header of the employee performance record document highlighting Plaintiff's alleged code of conduct violations. Dkt. No. 5-1.

U.S. at 678–79. The effect of the document on the remaining factual allegations, though, warrants further discussion.

Contrary to Jekyll Island's contention that Plaintiff's allegation of being "terminated" is a "misstatement," the employee performance record does *not* contradict Plaintiff's termination allegation in the amended complaint. Dkt. Nos. 5-1, 6; Irvin, 496 F.3d at 1206. For instance, Plaintiff alleges that she was given a final warning in the document (which aligns with the contents of the document), but she never contends that the December 16, 2024 document itself included a clause terminating her. Dkt. No. 6 ¶¶ 59–60. Plaintiff instead alleges that a *different letter*, issued on or about December 26, 2024, contained notice of termination, and this letter is not before the Court at this time. Id. ¶ 66; Iqbal, 556 U.S. at 678–79.

Accordingly, the December 16, 2024 employee performance record does not contradict Plaintiff's assertion that a different document terminated Plaintiff ten days later, and Plaintiff's factual allegation that she was given notice of termination via this second document provides the factual basis needed to support the conclusion that she was ultimately terminated. Iqbal, 556 U.S. at 678–79. A similar conclusion can be drawn with respect to the allegation that Norman and Simpson told Plaintiff she would be fired if she did not sign the December 16, 2024 employee performance record—the contents of the employee performance record

itself do not contradict the allegation that Norman and Simpson made separate oral statements when discussing the document with Plaintiff. Dkt. No. 6 ¶ 61; Dkt. No. 5-1. Likewise, the employee performance record does not clearly contradict the allegation that the document "made clear that [Plaintiff] would be required to continue working with Curry," dkt. no. 6 ¶ 60, as it does contain a clause discussing how Plaintiff and Curry would be expected to work together "in a respectful and professional manner moving forward," dkt. no. 5-1 at 3.

On the other hand, the employee performance record does contradict other allegations in the amended complaint such that the exhibit should govern over those allegations in the present motion to dismiss analysis. Irvin, 496 F.3d at 1206. For example, the text of the employee performance record contradicts Plaintiff's allegations that the document reprimanded Plaintiff for reporting early to work, as a reprimand for that specific reason is not found in the referenced exhibit. Dkt. No. 6 ¶ 59; Dkt. No. 5-1. The document also does not state that Jekyll Island would not take any action against Curry, dkt. no. 6 ¶ 59; it instead states that "both parties" (Curry and Newman) would be placed on a "Final Written Warning" based on competing reports of misconduct, and it states that *both Plaintiff and Curry* would be required to take various steps to address management's professionalism concerns, dkt. no. 5-1 at 3.

After accounting for the impact of the employee performance record on how the Court views the allegations in the amended complaint, the Court concludes that it is not proper to dismiss Counts II and III at this time. To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class. Arafat v. Sch. Bd. of Broward Cnty., 549 F. App'x 872, 874 (11th Cir. 2013) (citing Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Lewis v. City of Union City, Ga., 918 F.3d 1213, 1221 (11th Cir. 2019). Likewise, to establish a prima facie case for retaliation under Title VII, a plaintiff must show that "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." Arafat, 549 F. App'x at 874 (citing Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001)). While Plaintiff need not establish a prima facie case to survive Jekyll Island's motion to dismiss on Count II or III, these elements are nonetheless useful guidance at this stage. Swierkiewicz, 534 U.S.

at 510-11; see also Martinez-Lopez v. GFA Ala. Inc., 797 F. Supp. 3d 1309, 1348 (N.D. Ga. 2025) (discussing retaliation claims).

Jekyll Island contends that both Counts II and III should be dismissed for failure to plausibly allege an "adverse employment action." Dkt. No. 7 at 8-10. This Court has indicated that an adverse employment action "is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." Boothe v. Henderson, 31 F. Supp. 2d 988, 996 n.6 (S.D. Ga. 1998).

In contending that Plaintiff has not sufficiently pled an adverse employment action to support Counts II and III, Jekyll Island relies in part upon the Supreme Court's opinion in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006). Dkt. No. 7 at 8-10. There, the Court held that "petty slights or minor annoyances that often take place at work and that all employees experience" are not enough to qualify as adverse employment actions. 548 U.S. at 68. In doing so, the Court reasoned that "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight," but "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." Burlington, 548 U.S. at 69.

Here, Plaintiff has plausibly alleged multiple adverse employment actions beyond "petty slights or minor annoyances" incidental to a normal workplace. Id.; see generally Dkt. No. 6. As highlighted by Plaintiff, dkt. no. 9 at 6, Counts II and III are not based solely on the allegations that Demarco stopped speaking to Plaintiff and that another individual was assigned to run food from the kitchen—as mere "personality conflicts" or "snubbing" may, in some cases, be insufficient to support a Title VII claim. Id.; Dkt. No. 9 at 6. Rather, Plaintiff alleges that, beyond the work changes and issues with Demarco, Norman and Simpson issued a reprimand to Plaintiff, one of the examples of an "adverse employment action" identified by this Court in Boothe, 31 F. Supp. 2d at 996 n.6, by executing the employee performance record describing how Plaintiff's conduct was in violation of workplace policies. Dkt. No. 6 ¶¶ 59-61; Dkt. No. 5-1. While documentation of that reprimand undermines Plaintiff's contention that the reprimand was due to her decision to show up to work while Curry was working, the document does nonetheless reprimand Plaintiff for her behavior during the investigation of the alleged harassment, issue a final warning, and impose required "next steps" on Plaintiff as a result. Dkt. No. 5-1 at 2-3; see also Dkt. No. 6 ¶¶ 59-60.

The amended complaint also contains factual allegations describing Plaintiff's ultimate termination following this

reprimand, alongside allegations describing management's alleged failure to follow its prior custom of checking in with absent employees before termination. Dkt. No. 6 ¶¶ 63-67. At this stage, Plaintiff's allegations that she was reprimanded following her harassment report, alongside documentation of a negative employee performance report which appears on the record, make it plausible that Plaintiff suffered an "adverse employment action" to support Counts II and III, especially when bolstered by the allegations of management's failure to follow ordinary policy before ultimately terminating Plaintiff. Id.[6]

Jekyll Island also contends that Plaintiff has not plausibly alleged "differential treatment based on sex" to support Count II's disparate treatment discrimination claim and instead relies upon "labels and conclusions" for this claim. Dkt. No. 7 at 7-8. However, the Court holds that the allegations in the amended

[6] Jekyll Island places considerable emphasis on whether Plaintiff plausibly alleged "constructive discharge." Dkt. No. 7 at 9. Plaintiff does not hang her hat on constructive discharge as the "adverse employment action" supporting Counts II and III, but rather focuses on her allegations that (1) Demarco stopped speaking to her; (2) she was stopped from performing her job duty of running food from the kitchen; (3) Norman and Simpson reprimanded her; (4) Norman and Simpson issued a final warning to her; (5) management did not contact her to determine why she did not report to her scheduled shifts, despite having an ordinary custom of doing so; and (6) Norman ultimately terminated Plaintiff. Dkt. No. 9 at 7-8. Because Plaintiff's allegations satisfy the requirement to plausibly allege an adverse employment action, the Court declines to rule on whether Plaintiff plausibly alleged constructive discharge.

complaint, read in conjunction with the employee performance record properly before the Court, give rise to a different conclusion. See generally Dkt. Nos. 5-1, 6. To explain, the employee performance record outlines managerial concerns about *both* Curry and Plaintiff. Dkt. Nos. 5-1. The document specifically notes that Curry and Plaintiff made similar complaints of misconduct (harassment) regarding one another, both parties failed to cooperate with requests to produce text messages relevant to the company's sexual assault investigation, and both parties conducted themselves in a manner which fell below the company's professionalism standards. Id. at 2. Though this document only lists Plaintiff under the "Employee name" portion indicating the employee being reported, the document nonetheless states that management was placing both Plaintiff and Curry on a "Final Written Warning" and required that both Curry and Plaintiff take required "next steps" to address professionalism and interpersonal concerns. Id. at 2-3.

Though the employee performance record places Curry (a man) and Plaintiff (a woman) on similar footing as to the allegations against them, Plaintiff alleges in the amended complaint that, unlike its treatment of Plaintiff, Jekyll Island did not actually reprimand Curry for his actions, Curry was not given a "Final Warning" despite the document's promise to do so, and Curry was not ultimately terminated as a result of the harassment

allegations. Dkt. No. 6 ¶¶ 66–70. The employee performance record merely promises that certain repercussions would be imposed on Curry, but it does not shed light on whether management *actually carried out* the punishment described therein. Dkt. No. 5-1. Accordingly, at this stage, Plaintiff's allegations that Curry did not suffer the same consequences as Plaintiff are entitled to a presumption of truth. Iqbal, 556 U.S. at 678–79; Dkt. No. 6 ¶¶ 66–70.

As such, this alleged differential treatment across two individuals of different genders, when read in conjunction with the employee performance record highlighting the similar conduct of each of the parties, makes it plausible that Jekyll Island was "treating *like* cases differently." Lewis, 918 F.3d at 1222 ("As we have said many times—and as all of us know intuitively—'[d]iscrimination consists of *treating like cases differently*.'" (quoting N.L.R.B. v. Collier, 553 F.2d 425, 428 (5th Cir. 1977) (alteration adopted))). Should Jekyll Island seek to undermine Plaintiff's allegation that Curry was not punished in the same manner as Plaintiff, that may be revealed through discovery.

Finally, Jekyll Island argues Plaintiff does not plausibly allege retaliation because of the "'more likely explanations' stated on the [employee performance report] document itself: Plaintiff's own misconduct required action." Dkt. No. 7 at 8. This argument, however, is premature and does not justify dismissal at

this time. To explain, there are two primary frameworks utilized by the Eleventh Circuit when faced with a discrimination claim: McDonnell Douglas and the "convincing mosaic" standard. Martinez-Lopez, 797 F. Supp. 3d at 1348 (describing frameworks). On one hand, "[a] 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 946 (11th Cir. 2023).

On the other hand, McDonnell Douglas is a burden-shifting analysis, where a "prima facie showing entitles the plaintiff to a rebuttable presumption of intentional discrimination." Id. at 944 (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714–15 (1983)). "The defendant then rebuts that presumption (if it can) by offering evidence of a valid, non-discriminatory justification for the adverse employment action." Id. (citing Aikens, 460 U.S. at 714). Once that justification is offered, the presumption of discrimination falls away, and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination. Id. (citing Aikens, 460 U.S. at 714; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

With this framework in mind, Jekyll Island's argument that the true reason for the adverse action was to punish Plaintiff's

misconduct seems to be an attempt to defeat Plaintiff's discrimination claim with a "valid, non-discriminatory justification" for its conduct. Id.; Dkt. No. 7 at 8. Because this case is at the motion to dismiss stage, not the summary judgment stage (or, in some cases, later) when such justifications are accounted for, Jekyll Island's arguments regarding whether it had a legitimate reason to reprimand and fire Plaintiff are of little value at this point. See Jaffe v. Birmingham Gastroenterology Assocs., P.C., No. 2:20-CV-01821-KOB, 2021 WL 4220356, at *4 (N.D. Ala. Sept. 16, 2021) (drawing a similar conclusion with respect to plaintiff's arguments about pretext presented at the motion to dismiss stage). As a result, the Court holds that it is improper to dismiss Counts II and III at this time.

**III. Count IV: Plaintiff's Negligent Retention Claim**

In Count IV, Plaintiff asserts a claim for negligent retention in violation of O.C.G.A. § 34-7-20. Dkt. No. 6 ¶¶ 113-22. Jekyll Island argues that this claim should fail as a matter of law because negligent retention claims arising under Georgia law are "derivative claims" which cannot survive unless the plaintiff's complaint supports another actionable claim under state law. Dkt. No. 7 at 10-11. In response, Plaintiff states that, to the extent Count IV is a derivative claim, it is adequately supported by her allegations that Curry subjected her to assault and battery, even

if Plaintiff does not bring a claim for either state-law tort as its own specified count. Dkt. No. 9 at 2–3.

"Georgia law recognizes a claim in tort for an employer's negligent hiring, retention or supervision of an employee who subsequently harms the plaintiff." Futrell v. Southeastrans, Inc., No. 1:20-cv-04674-WMR-RDC, 2021 WL 2547660, at *6 (N.D. Ga. Apr. 1, 2021) (first citing O.C.G.A. § 34-7-20; then citing Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001)), report and recommendation adopted, 2021 WL 2548697 (Apr. 22, 2021); see also Smith v. Outdoor Network Distrib., LLC, 626 F. Supp. 3d 1320, 1347–48 (M.D. Ga. 2022) (same). O.C.G.A. § 34-7-20 provides that "[t]he employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." To state a claim for such negligent retention, a plaintiff must plausibly allege that the employer "knew or should have known of an employee's tendencies to engage in certain behavior relevant to the plaintiff's alleged injuries." Futrell, 2021 WL 2547660, at *6; Leo v. Waffle House, Inc., 681 S.E.2d 258, 262 (Ga. Ct. App. 2009); Couick v. Morgan, No. 4:10-CV-153, 2010 WL 5158206, at *8 (S.D. Ga. Dec. 14, 2010).

"Courts have uniformly found that this claim is 'derivative,' or in other words, the plaintiff must assert another actionable claim under state law to support a claim for negligent supervision or retention." Futrell, 2021 WL 2547660, at *6 (citing Metro.

Atlanta Rapid Transit Auth. v. Mosley, 634 S.E.2d 466, 469 (Ga. Ct. App. 2006); Phinazee v. Interstate Nationalease, Inc., 514 S.E.2d 843, 846 (Ga. Ct. App. 1999)). Regarding this requirement, district courts in this circuit have held that "federal Title VII claims for sexual harassment and/or retaliation will generally not support a claim under Georgia law for negligent supervision and retention." Jones v. Nippon Cargo Airlines Co., Ltd., No. 1:17-CV-1589-TWT-JKL, 2018 WL 1077355, at *13 (N.D. Ga. Jan. 12, 2018) (citing Canty v. Fry's Elecs., Inc., 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) ("There is no distinct tort in Georgia law for harassment, retaliation or discrimination."); Orquiola v. Nat'l City Mortg., 510 F. Supp. 2d 1134, 1140 (N.D. Ga. 2007) ("Like there is no distinct tort in Georgia law for 'sexual harassment,' there is no separate tort under Georgia law for 'retaliation.' Georgia courts have described negligent retention as a 'derivative' claim thus requiring an underlying tort of which Plaintiff has none in state law.")), report and recommendation adopted sub nom. Jones v. DAL Glob. Serv., LLC, 2018 WL 1071166 (Feb. 27, 2018); see also Futrell, 2021 WL 2547660, at *7.

In its reply, Jekyll Island disputes the persuasive impact of another district court in this circuit's decision in Jones v. Nippon Cargo Airlines, contending that Jones is "legally unsupported and an outlier in both Georgia federal and state courts." Dkt. No. 10 at 3. In Jones, the court indicated that it

was not aware of any authority suggesting that a plaintiff must assert an actual cause of action for battery in order to assert a derivative claim for negligent supervision and retention—so long as the allegations in the complaint would be sufficient to support that underlying claim had it been brought. 2018 WL 1077355, at *14, *14 n.22. Here, Jekyll Island contends that the Georgia Court of Appeals "reaffirmed exactly that point"—meaning, imposed a requirement that a negligent retention plaintiff bring the underlying tort as its own count—in Keisha, LLC v. Dundon, 809 S.E.2d 835, 838 (Ga. Ct. App. 2018), which was decided ten days after Jones.

Jekyll Island is wrong. Keisha does not establish a rule that a plaintiff pursuing a negligent retention claim must also pursue, as its own substantive count, the underlying state law cause of action. 809 S.E.2d at 838. There, at the motion for summary judgment stage, the Georgia Court of Appeals analyzed a derivative negligent hiring and retention claim premised on the underlying tort of negligence. 809 S.E.2d at 836. Importantly, though, Keisha's plaintiff *did* assert negligence as its own cause of action separate from the negligent hiring and retention claim. Id. at 837. The court indicated that the trial court properly granted summary judgment in favor of the defendant-gas station on the negligence claim; and, because the negligence claim failed as a matter of law, so too did the negligent hiring and retention claim.

Id. While this does align with the derivative nature of a negligent retention claim—which neither side seems to dispute in the present case—it does not address a situation where a plaintiff attempts to assert a negligent retention claim by alleging facts to support the underlying tort, but without pleading the underlying tort as a specified count. Id. at 837. Simply put, that was not the situation at play in Keisha, as the underlying tort was alleged as a specified count, giving the court no reason to reach that issue. Id.

This being so, Jones, though not binding on this Court, is persuasive in the present analysis, and Jekyll Island has not pointed to any Georgia authority undermining the analysis in that case. Dkt. Nos. 7, 10. In fact, Jones finds additional support in Crawford v. ARG Resources, LLC, No. 1:24-CV-1095-SCJ-JSA, 2025 WL 3192959, at *19 (N.D. Ga. July 30, 2025), report and recommendation adopted, 2025 WL 3219475 (Sept. 23, 2025), appeal dismissed, No. 25-13846-AA, 2025 WL 4070002 (11th Cir. Dec. 12, 2025); see also Dkt. No. 9 at 2–3 (citing Crawford). There, relying on Jones, the court stated: "Defendant contends that Plaintiff was required to plead the underlying tort as a specified count, rather than just the facts to support a claim. The Court disagrees." Crawford, 2025 WL 3192959, at *19. Accordingly, the Court declines to rule that negligent retention claims are categorically barred when brought

without a specified count for the underlying tort in the absence of authority to support such a rule. Id.; Dkt. Nos. 7, 10.

Notwithstanding its discussion of the underlying tort requirement, Jekyll Island also contends that Plaintiff's amended complaint does not support an actionable tort claim, dkt. no. 7 at 10, and that Plaintiff has not plausibly alleged Jekyll Island "knew or should have known" Curry posed a risk, dkt. no. 10 at 3; Futrell, 2021 WL 2547660, at *6.[7] To allege a battery claim in Georgia—one of the potential underlying torts identified by Plaintiff—the legal threshold is "relatively low." Mosley, 634 S.E.2d at 469. Generally speaking, "unlawful touching" giving rise to a civil battery claim consists of touching which is "'offensive,' and an 'offensive' touching is one which proceeds from anger, rudeness, or lust." Id. at 468 (quoting Newsome v. Cooper-Wiss, Inc., 347 S.E.2d 619, 621 (Ga. Ct. App. 1986)). The relevant test is whether the touching "would be offensive to an ordinary person not unduly sensitive as to his dignity." Id. (quoting Newsome, 347 S.E.2d at 621). Under this standard, a battery claim may be supported by "even minimal touching," including "brief and isolated incident[s]" of groping. Id.

[7] At oral argument, counsel for Jekyll Island conceded that the allegations in the amended complaint could likely support a battery claim.

(citing, among others, O.C.G.A. § 51-1-13; Jarrett v. Butts, 379 S.E.2d 583, 586 (Ga. Ct. App. 1989)).

Here, Plaintiff alleges multiple instances in which Curry made unwanted physical contact with her. For example, Plaintiff contends that, on multiple occasions between April and November 2024, Curry attempted to kiss Plaintiff; when she tried to dodge these efforts, "Curry's lips often hit [Plaintiff's] cheek or another part of her body," and "Curry's hands also frequently made contact with [Plaintiff's] body." Dkt. No. 6 ¶ 33. Plaintiff states that Curry touched her leg and "pulled on her pants in a manner to suggest that he wanted her to remove her pants." Id. During the same period, Curry also allegedly "smelled [Plaintiff's] neck and touched her buttocks." Id. ¶ 32. All of these instances of contact cited by Plaintiff occurred *after* she told Curry that she was no longer interested in a romantic or sexual relationship with him. Id. ¶¶ 30, 32, 33. Under Georgia law, these alleged repeated instances of unwanted and sexual touching by Curry, especially when viewed alongside the other allegations of harassment in the amended complaint, satisfy Georgia's "low threshold" to give rise to a battery claim, which in turn provides adequate support for a derivative claim of negligent retention.

Finally, Jekyll Island contends that Plaintiff has not plausibly alleged that it knew, or reasonably should have known, that Curry had a propensity to engage in the alleged tortious

conduct. Dkt. No. 10 at 3. Similar to its argument regarding Demarco's supervisory role, Jekyll Island states that Plaintiff did not tell any agent of Jekyll Island about the alleged conduct until "late November 2024." Id. This argument is undermined by the factual allegations in the amended complaint; as explained supra, Plaintiff alleges that Demarco had supervisory authority from May 2024 going forward, Plaintiff began reporting the conduct to Demarco as early as May 2024, and Plaintiff "repeatedly reported Curry's sexual harassment and sexual assaults to Demarco," yet Demarco allegedly took no action until November 2024. Dkt. No. 6 ¶¶ 25, 43–45. These allegations appear in the amended complaint directly following the allegations describing the events making up the alleged "sexual harassment and sexual assaults." Id. at 29–49.

Accordingly, the Court holds that Plaintiff's allegations of repeated reporting to Demarco, when read in context, make it plausible that Jekyll Island knew, or reasonably should have known, of Curry's propensity to engage in the tortious conduct alleged, yet the company retained Curry for months despite this purported knowledge. Futrell, 2021 WL 2547660, at *6; see also Dkt. No. 6 ¶¶ 68–70 (indicating that, even after the April to November 2024 period highlighted by Plaintiff, Jekyll Island did not reprimand Curry, give him a final warning, or terminate him as a result of the purported harassment). Thus, it is improper to dismiss Count

IV based on the arguments raised in Jekyll Island's renewed motion to dismiss. Dkt. No. 7.

## CONCLUSION

Many of Jekyll Island's arguments are more properly considered at the summary judgment stage, and the remainder are insufficient to merit dismissal at this time. Based on the parties' arguments, governing authority, and the points discussed during oral argument, Jekyll Island's motion to dismiss the amended complaint, dkt. no. 7, is **DENIED.**

**SO ORDERED** this 27th day of August, 2026.

_________________________________
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA